# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY GRAFFIA, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3288** |
| **BURL CAIN, WARDEN** | **SECTION "F"(6)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE**.

## PROCEDURAL HISTORY[1]

Petitioner, Anthony Graffia, Jr., presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was charged on May 12, 2004 with: 1) Aggravated robbery; 2) attempted aggravated rape; and, 3) second degree battery.[2]  Following his pleas of not guilty, petitioner filed an omnibus motion, including a Motion to Suppress Confession, Identification, and Physical Evidence.  On November 4, 2004, the trial judge denied the motions to suppress identification and statements.  On May 16, 2006, a twelve-person jury in the Twenty-Fourth Judicial District Court for the Parish of Jefferson found petitioner guilty as charged.  On May 25, 2006, the trial judge sentenced petitioner to 40 years for the aggravated robbery conviction; to 50 years without benefit of probation, parole, or suspension of sentence for the attempted aggravated rape conviction; and three to five yeas for the conviction of second degree battery.  All the sentences were ordered to be served at hard labor, and to run concurrent with one another.

On January 30, 2007, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's convictions and sentences, but remanded the matter with instructions that the trial court was to provide petitioner with written notification of his obligation to register as a sex

---

[1]A portion of the procedural history was taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Graffia*, 951 So.2d 1186, No. 2006-KA-0756 (La. App. 5 Cir. 2007).

[2]Petitioner was also charged with aggravated rape and sexual battery.  These charges, however, were *nolle prossed* by the State following trial on the first three charges.

offender.  *State v. Graffia*, 951 So.2d 1186, No. 2006-KA-0756 (La. App. 5 Cir. 2007).

Petitioner did not seek relief from the Louisiana Supreme Court in connection with the

Louisiana Fifth Circuit's January 30, 2007 adverse decision.

Following the conclusion of his direct appeal proceedings, petitioner sought

post-conviction relief, raising the same arguments that he raises in the instant federal habeas

application.[3]  On January 22, 2008, the state district court denied petitioner's post-conviction

application.[4]  On April 17, 2008, the Louisiana Fifth Circuit Court of Appeal, finding no

error in the trial court's January 22, 2008 decision, denied petitioner relief.  *State ex rel.*

*Graffia v. Cain*, No. 2008-KH-0204 (La. App. 5 Cir. April 17, 2008) (unpublished opinion).[5]

On February 20, 2009, the Louisiana Supreme Court likewise denied petitioner's writ

application.  *State ex rel. Graffia v. State*, 1 So.3d 490, No. 2008-KH-1201 (La. 2009).

On April 6, 2009, petitioner filed the instant federal habeas corpus application.

Petitioner sets forth the following seven arguments in support of his claim that trial and

appellate counsel were unconstitutionally ineffective:  1) Counsel erred in failing to attain

an expert witness; 2) counsel erred in failing to attack the sufficiency of the evidence offered

---

[3]A copy of petitioner's post-conviction application is contained in the State rec., vol. 2 of 5.

[4]A copy of the state district court's Order denying petitioner post-conviction relief is contained in the State rec., vol. 2 of 5.

[5]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 5 of 5.

at trial to support his attempted rape conviction; 3) counsel erred in failing to obtain witnesses who would have offered testimony to the effect that petitioner acted in self-defense and that petitioner was intoxicated and, therefore, lacked the requisite specific intent to commit the crimes for which he was convicted; 4) counsel erred in failing to challenge the sufficiency of the bill of information filed against him; 5) trial and appellate counsel erred in failing to raise issues relating to prosecutorial misconduct; 6) counsel erred in stipulating to a substantial portion of the State's case, thereby failing to present a proper defense; and, 7) appellate counsel erred in failing to argue "error patent", in failing to raise objections which had been preserved for appellate review, and in failing to argue that trial counsel was ineffective.  In its response, the State concedes that petitioner's habeas application is timely and does not contest the fact that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  Accordingly, the court shall proceed to address the merits of petitioner's arguments following its review of the pertinent facts and applicable standard of review.

**FACTS**[6]

According to the victim, J.H., on March 2, 2004, she was working the night shift at the Captain's Den, a bar in Jefferson Parish.  Before closing, a man identifying

---

[6]The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Graffia*, 951 So.2d 1186, No. 2006-KA-0756 (La. App. 5 Cir. 2007).

himself as Tony came into the establishment. There were two regular customers in the bar, Marc Cantrelle and L.J. Tony, later identified by the victim in a lineup and in court as the petitioner, told J.H. and the other customers that he had gotten out of prison six months ago. Subsequently, both Cantrelle and L.J. left the bar, but Cantrelle returned. J.H. offered Cantrelle a ride home because the petitioner's presence had begun to alarm her and she did not want to be alone with him in the bar. The petitioner asked J.H. for a ride, but she refused, telling him she did not know him. When J.H. prepared to close the bar, she told everyone to leave. As soon as the petitioner left, she locked the door after him. She and Cantrelle remained inside while she completed her duties.

The petitioner returned ten minutes later and asked to use the bathroom, but J.H. refused to let him in the bar. Later, J.H. checked outside to see if he was still there, but did not see the petitioner. However, when she and Cantrelle went outside after locking up, the petitioner was standing by her van. When she unlocked her van doors, the petitioner got inside and sat in the back seat without her permission. Nervous about the situation, J.H. asked Cantrelle to sit in the front passenger seat. J.H. testified that she felt threatened enough to place a knife she kept in the pocket of her car door under her leg. Following the petitioner's directions, she drove until he told her to stop. When Cantrelle got out and opened the van door to let the petitioner exit, the petitioner began hitting him and punching J.H. in the face. The petitioner pushed Cantrelle out of the van, grabbed J.H. and dragged

her between the seats.  While J.H. was flat on her back on the floorboard, he punched her in the face.  He then got into the driver's seat and drove away with J.H., telling her to get into the front seat.  J.H. got into the front seat as instructed.

J.H. testified she first thought the petitioner wanted to rob her of money from the bar, but the petitioner then told her to take off her clothes.  At that point, she believed he was going to rape her, so she began kicking him in the face.  The petitioner responded by beating her and screaming, "I'm going to fucking kill you, bitch."  J.H. was convinced the petitioner was going to kill her as he continued to beat her, saturating her clothes in blood.  She had so much blood in her face and her eyes that she could not see.  He also bit her.  When he stopped biting her little finger, J.H. was able to reach the keys and turn off the van engine.  As the petitioner tried to re-start the van, she escaped.  The petitioner drove off.  The van contained her purse, credit card, cell phone, all her college course books, and supplies and equipment for her cleaning business.

J.H. was subsequently taken to Ochsner Hospital where she received treatment for her injuries.  She suffered fractures to her nose, cheekbones, and eye socket, a torn rotator cuff, a dislocated rib from the breastbone, three bulging discs in her neck and two bulging discs in her mid-back.  J.H. required five stitches on her face and five across her eye.  J.H.'s teeth were loose, and she suffered nerve damage that caused her to have no feeling in her upper lip and her front teeth.

J.H. checked her bankcard on-line and found that the petitioner used it to buy gas in Picayune, Mississippi. Her van was later recovered with everything inside missing, including a secondary radio. The van was covered in blood from her injuries. J.H. identified the petitioner in a physical lineup. She was unable to make identification in an initial photographic lineup.

Cantrelle's testimony was similar. He testified that prior to closing the bar, only he, J.H., and another man were there. When J.H. locked the bar, Cantrelle was the only person inside with her. When they left to go to J.H.'s vehicle, the man who had been in the bar came to the van. All three of them left in J.H.'s van, with Cantrelle riding in the front passenger seat. He stated that the other man attacked him after Cantrelle opened the door of the van to let him out. He was beaten until he fell or was shoved out of the van.

Detective Carroll searched J.H.'s van after it was recovered and found bloodstains on the steering wheel, console, seats and carpet. DNA testing revealed that all of the blood samples taken from the van belonged to J.H.

The petitioner testified that he had prior convictions in 1984 for accessory after the fact to first degree murder, and in 2000 or 2001 for simple criminal damage and attempted possession of heroin. According to petitioner, after arriving at the Captain's Den on the night in question, he purchased a beer and engaged in a conversation with J.H.

and Cantrelle.  Later, Cantrelle went to his car and "fumbled" in it for a few minutes, before he returned to the bar. When J.H. offered Cantrelle a ride home, the petitioner asked J.H. for a ride because he had just gotten out of jail and was on parole.  According to the petitioner, J.H. agreed to give him a ride home, but told him that he would have to leave the bar and wait outside.  After the petitioner saw several police cars outside, he asked to re-enter the bar to get out of the view of the officers.  J.H. refused to let the petitioner back in because she did not know him and was counting money.  The petitioner asked her to hurry and smoked some marijuana while waiting.  When J.H. and Cantrelle came out, they all got into the van.  J.H. was in the driver's seat, Cantrelle in the passenger seat, and the petitioner in the back seat.  The petitioner claimed that when he knelt between the two seats, Cantrelle hit him on the back of his head.  He thought that Cantrelle was trying to rob him because J.H. knew he had money.  He also thought that Cantrelle might have gotten a gun earlier from his car.  The petitioner claimed he and Cantrelle started to fight, and then J.H. tried to grab the petitioner and started kicking him.  During the melee, the van struck a parked vehicle or something, and came to a stop.  According to the petitioner, both Cantrelle and J.H. continued to fight him.  As he fought with J.H., Cantrelle opened the door of the van and jumped out.  J.H. also exited the van in the same place as Cantrelle.  The petitioner admitted that some of J.H.'s injuries could have been caused by the altercation.

The petitioner said that he drove off in J.H.'s van without her permission because he was nervous and he did not want to get out to fight them. The petitioner was also scared that he could go to jail for three years because he had violated his probation by being in a barroom and there was an outstanding warrant for his arrest. The petitioner testified that he had not reported to his parole officer and that she was looking for him. The petitioner admitted that he drove to Picayune, Mississippi that morning, and used J.H.'s credit card to get gas. He later returned to the New Orleans area, leaving J.H.'s van in New Orleans East.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States

Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have
> independent meaning.  A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a case differently than
> we have done on a set of materially indistinguishable facts.  The court may
> grant relief under the "unreasonable application" clause if the state court
> correctly identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case.  The focus of the
> latter inquiry is on whether the state court's application of clearly
> established federal law is objectively unreasonable, and we stressed in
> *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application
> is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations

omitted).

As to questions of fact, factual findings are presumed to be correct and a

federal court will give deference to the state court's decision unless it "was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. §

2254(e)(1).

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

As noted earlier, petitioner raises, in the instant petition, the same arguments in support of his claim of ineffectiveness as he raised in connection with his application for state post-conviction relief. In addressing petitioner's arguments, the state district court first examined applicable federal and state law.

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Washington*, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Legrand*, 2002-1492 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the *Strickland* test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

Thereafter, the state district court proceeded to address petitioner's specific arguments supporting his claim of ineffective assistance of counsel.

## 1) Counsel Erred in Failing to Obtain an Expert Witness

Petitioner argues that counsel should have obtained an expert witness to refute the State's version of events, as related by the victim, J.H. Specifically, petitioner argues that an expert could have refuted the State's theory, as supported by the victim's testimony, that the victim's blood was found throughout the van as a result of the beatings she suffered at the hands of petitioner. According to petitioner, an expert could have shown that the blood resulted from a collision, that "J.H. hit something while driving, causing her injuries."[7] Petitioner also claims that an expert could have refuted J.H.'s testimony regarding whether or not petitioner was intoxicated at the time of crime, what petitioner's intention was at the time of the crime, along with the extent of her injuries, thereby preventing J.H. from offering testimony regarding "phantom add-on injuries designed to garner sympathy from the jury".[8]

It is well-established that the failure to contact or call a witness is not *per se* prejudicial to the point of warranting habeas relief. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored, [in

---

[7]Rec. doc. 1, petitioner's supporting memorandum, p. 3.

[8]Rec. doc. 1, petitioner's supporting memorandum, p. 8.

federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative"). In *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of a witness would have been favorable and that the witness would have testified at trial. Petitioner must show a reasonable probability that the uncalled witness would have made a difference in the result. *Alexander*, 775 F.2d at 603. There is a strong presumption that the failure of petitioner's counsel to call a witness is a strategic choice. *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (1984).

In this case, petitioner has failed to explain how any expert could have refuted the victim's testimony regarding her perceptions of petitioner's demeanor, i.e, whether he was intoxicated, what his intentions were, at the time of the incident. Further, petitioner offers no explanation as to how any expert could have attributed the vast amount of the victim's blood found throughout the van to a vehicular collision, as opposed to beatings. As the state district court concluded in addressing the instant claim, petitioner has failed to prove prejudice as a result of counsel's failure to obtain testimony from a contrived expert witness given the overwhelming evidence of petitioner's guilty placed before the jury.

<u>2) Counsel Erred in Failing to Attack the Sufficiency of the Evidence</u>

Petitioner next argues that counsel was ineffective due to his failure to attack the sufficiency of the evidence offered at trial to support his attempted rape conviction. Petitioner contends that insufficient evidence was offered to prove he intended to rape J.H.

The Supreme Court established the due process standard a reviewing court must utilize in analyzing the sufficiency of the evidence in *Jackson v. Virginia***,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Pursuant to *Jackson*, the inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime, as identified by state substantive law, to have been proven beyond a reasonable doubt. *Id.* at 316-17, 99 S.Ct. at 2787. In a federal habeas corpus proceeding, great deference must be given to the factual findings in the state court proceedings such that the reviewing court must defer to the jury's resolution of credibility determinations and the justifiable inferences of fact that can be drawn from these determinations. *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989). Further, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993), *cert. denied*, 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993), citing *Summer v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982).

La. R.S. 14:42 provides, in pertinent part, as follows:

A.  Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

 (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

 (2) When the victim is prevented from resisting the act by threats of  great  and immediate bodily harm, accompanied by apparent power of execution.

La. R.S. 14:27 defines "attempt", in pertinent part, as follows:

A.  Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Under LSA-R.S. 14:10, "specific criminal intent" is defined as:

[T]hat state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

A review of the trial transcript reflects that the victim, J.H., testified that petitioner repeatedly hit her, to the point where "there was not a square inch of my clothing that was not saturated in my own blood."[9]  J.H. further testified that petitioner

---

[9]State rec., vol. 4 of 5, p. 360.

ordered her to take her clothes off, at which point, it was clear to J.H. that petitioner intended to rape her.[10]

Based upon the victim's testimony, along with its review of other trial testimony, the state district court, on post-conviction review, denied the instant claim, reasoning:

> The victim of the attempted rape testified to the jury, who believed her testimony that the defendant attempted to rape her. The petitioner himself testified, but the jury clearly rejected his account of events. The finding that the petitioner was guilty of attempted aggravated rape is a result of the jury's acceptance of the testimony of the victim. The jury's verdict is not a result of counsel's actions, but rather the facts as found after hearing testimony [from] the victim, a witness, and the petitioner himself.

This court does not find the above finding on the part of the state district court to be an unreasonable application of *Jackson* to the facts of this case. Further, a review of defense counsel's closing argument reflects that, contrary to petitioner's suggestion, counsel vehemently argued to the jury that the State had failed to submit sufficient evidence to support a guilty verdict in connection with the charge of attempted aggravated rape.

> When [J.H.] testified, what did she say he kept telling her? I'm going to kill you? I'm going to kill you? Is that what she said? Did she ever say he said, I'm going to rape you? . . . There's no indication of a rape here, of an attempt[ed] rape. There's an indication . . . from what you have heard

---

[10]State rec., vol. 4 of 5, pp. 360-361.

that there was an altercation in the van, and you have heard different stories as to what started this altercation.

     . . . .

Most importantly, don't even consider an attempt[ed] rape. There was no attempt[ed] rape. The attempt[ed] rape is not in the eyes of the beholder. It's for you to consider from the facts. I don't know what she was thinking might be going on, but you have to consider everything you heard today . . . . You have to sit and think of what actually you heard happened. And my personal belief is there's no way anyone can consider an attempt[ed] aggravated rape.[11]

### 3) Counsel Erred in Failing to Obtain Defense Witnesses

Petitioner next argues that counsel was ineffective in failing to obtain witnesses who would have offered testimony to the effect that petitioner acted in self-defense and that petitioner was intoxicated at the time of the incident at issue and, therefore, lacked the requisite specific intent. However, petitioner fails to identify any witness that may have testified on the issue of self-defense and, with respect to his alleged intoxication, he provides that his "parents were willing to testify at trial, if called."[12]

As noted earlier, the failure to call a witness to testify at trial is not *per se* prejudicial to the point of warranting habeas relief. *See Buckelew*, *supra*. With respect to counsel's failure to call petitioner's parents to offer testimony regarding petitioner's

---

[11]State rec., vol. 4 of 5, pp. 460-461 and 463.

[12]Rec. doc. 1, petitioner's supporting memorandum, p. 15.

alleged intoxication, as the state district court noted, in rejecting the instant issue on post-conviction, "petitioner's parents . . . were not present at the bar nor were they in the car during the attacks on the victim." Further, the court observed that testimony was offered at trial regarding petitioner's mental state at the time of the incident at issue.

> [P]etitioner exercised his right to testify at trial. He told the jury that he had consumed large amounts of alcohol and also smoked marijuana earlier on the night of the crimes. The court also notes that the victim testified regarding the extended period of time the petitioner spent drinking in the bar, as well as the level of intoxication exhibited by the petitioner.

Additionally, petitioner offered testimony to the effect that his actions toward the victim were taken in self-defense. According to petitioner, J.H. and the other passenger, Marc Cantrelle, attacked him in the van.[13] Thus, contrary to petitioner's assertion, a witness, namely, himself, did offer testimony at trial to the effect that he was intoxicated at the time of the incident and that he acted in self-defense. Counsel cannot be blamed if the jury chose not to believe petitioner's testimony. As for petitioner's claim that counsel was ineffective in failing to call other witnesses to offer testimony regarding his intoxication level at the time of the incident and that he acted in self-defense in connection with his beatings of the victim, petitioner has failed to identify what witnesses counsel could have called in light of the fact that there were no witnesses, other

---

[13]*See* State rec., vol. 4 of 5, pp. 437-438.

than the victim, Marc Cantrelle, and himself, to the incident at issue.  Accordingly, the court finds the instant claim to be without merit.

### 4) Counsel Erred in Failing to Challenge the Bill of Information

Petitioner next claims that counsel was ineffective due to his failure to challenge the sufficiency of the bill of information filed against him.  According to petitioner, the bill of information was unconstitutional for the following reasons.  First, it failed to specify the circumstances under which petitioner attempted to commit the aggravated rape of J.H.  LSA-R.S. 14:42(A)(1)-(6) defines aggravated rape as follows:

> [A] rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
>
> (4) When the victim is under the age of thirteen years.  Lack of knowledge of the victim's age shall not be a defense.
>
> (5) When two or more offenders participated in the act.
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.

Because the bill of information failed to specify which of the above provisions he was accused of violating, petitioner contends he could not adequately prepare a defense. Petitioner also claims that the bill of information was unconstitutional because it charged him with multiple crimes for the same course of conduct in violation of his protection against double jeopardy.

In addressing this claim, the district court noted that while it "is couched in terms of ineffective assistance of counsel . . . it is more properly considered a procedural argument of deficiency of the bill of information." The state court proceeded to reason:

> The merits of this claim are barred from consideration at this point by application of LSA-C.Cr.P. art. 930.4 (B) and (C). These articles provide that if the application alleges a claim that was known but inexcusably omitted from proceedings prior to conviction or on appeal, the court may deny relief.[14]

Thereafter, the state district court made reference to petitioner's first argument that his attorney was ineffective by failing to argue that the bill of information was defective "because it did not note which subsection of the statute was charged."[15] The court proceeded to reject the argument, providing:

---

[14]State rec., vol. 2 of 5.

[15]State rec., vol. 2 of 5. The state district court made no reference to petitioner's second argument that counsel was ineffective due to his failure to argue that the bill of information was defective because it was violative of petitioner's protection against double jeopardy.

Significantly, the petitioner admits that his attorney had open file discovery. Review of this claim requires no testimony and no evidentiary hearing. As such, it should have been raised on direct appeal.

The court finds as a matter of law that the petitioner has failed to meet his burden of proof or to prove a violation of the *Strickland* standard. To the contrary, the court specifically finds as a matter of fact that trial counsel performed in a zealous and effective manner at all times prior to and during the trial.[16]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), citing *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338 (citations omitted). In order to fulfill the independence requirement, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment is independent of federal law and rests on a state procedural bar. *Amos*, 61 F.3d at 338; *Harris*, 489 U.S. at 263, 109 S.Ct. at 1043.

---

[16]State rec., vol. 2 of 5.

The state procedural rule must also be "adequate". "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998), citing *Amos*, 61 F.3d at 339. A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*, citing *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996).

Both La.C.Cr.P. arts. 930.4 (B) and (C) are generally considered to be independent and adequate state court remedies sufficient to procedurally bar claims for federal habeas review. *See generally Simmons v. Cain*, 2008 WL 2185422, *5-8 (E.D. La. 2008). However, as Judge Africk noted in *Bell v. Cain,* 2002 WL 31002831, *8 (E.D. La. 2002), this "general rule is not true *in the context of an ineffective assistance of counsel claim. Rather, in that limited context, the opposite is true [emphasis original].*"

> The Louisiana Supreme Court has noted, "The appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal." *State v. Truitt,* 500 So.2d 355, 359 (La.1987); *see also State v. Watson,* 817 So.2d 81, 84 (La. 2002) ("Generally, the preference for addressing claims of ineffective assistance of counsel is a post-conviction proceeding in the trial court, not on appeal."). Therefore, to the extent the state district court intentionally denied petitioner's claim pursuant to La.C.Cr.P. art. 930.4(C), this Court finds that, in that limited context, La.C.Cr.P. art. 930.4(C) is not "adequate" so as to render *an ineffective assistance of counsel claim* procedurally barred in a federal *habeas corpus* proceeding. Accordingly, this Court will address the merits of petitioner's claim [emphasis original].

*Id. See also Orange v. Cain*, 2009 WL 938909, *8 (E.D. La. 2009) (state court's dismissal of ineffectiveness claim based on La.C.Cr.P. arts. 930.4 (B) and (C) was inadequate to procedurally bar federal habeas review; court proceeded to address merits of ineffectiveness claim).

Based upon the above, this court finds that a review on the merits with regard to petitioner's ineffectiveness claim based upon counsel's failure to challenge his bill of information is appropriate.

To the extent petitioner argues that the bill of information failed to comply with the requirements of Louisiana law regarding the presentation of the elements of the crime of attempted aggravated rape, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986). Thus, the court may consider petitioner's arguments only in the context of federal constitutional law.

Applying a due process analysis, the United States Supreme Court has held that an indictment or, in this case, bill of information, is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and

affords him protection against double jeopardy. *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed.2d 92 (1953); *see also* La. Code Crim. P. art. 464.[17] The sufficiency of a state court bill of information or indictment will not be reviewed under Section 2254, unless it can be shown that it is so defective that it deprives the convicting court of jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994).

In the instant matter, contrary to petitioner's suggestion, he was clearly informed of the specific provisions of aggravated rape, as defined by LSA-R.S. 14:42, with which he was charged with committing. Petitioner admits that the defense was provided with a copy of J.H.'s statement to police, along with a copy of the supplemental police report.[18] Armed with this information, the defense was well aware of the basis of the State's attempted aggravated rape charge against him and, as such, there was no valid basis to challenge the State's bill of information for lack of specificity and, as such, counsel was not ineffective for failing to lodge such a challenge.

Petitioner also claims that counsel was ineffective for failing to challenge the bill of information on the ground that the separate charges of aggravated robbery,

---

[17]La. Code Crim. P. art. 464 provides:

> The indictment shall be a *plain, concise, and definite* written statement of the essential facts constituting the offense charged. *It shall state for each count the official or customary citation of the statute* which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice (emphasis added).

[18]Rec. doc. 1, petitioner's memorandum, pp. 7, 12.

attempted aggravated rape, and second degree battery violated the constitutional prohibition against double jeopardy. Petitioner's argument appears to be that all of these related charges were improperly based upon a single incident. For the following reasons, petitioner's argument is without merit.

The Double Jeopardy Clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *United States v. Nichols*, 741 F.2d 767, 771 (5th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1686, 84 L.Ed.2d 333 (1985).

The test generally applied in determining whether offenses are sufficiently distinguishable so as to permit punishment on all without violating the Double Jeopardy Clause is set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which states: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." The Fifth Circuit has consistently applied the *Blockburger* test in assessing double jeopardy challenges both on direct appeal of federal convictions, *United States v. Fisher*, 106 F.3d 622, 632-33 n.11 (5th Cir. 1997); *United States v. Buchanan*, 70 F.3d 818, 830 n.12 (5th Cir. 1995),

and in habeas corpus challenges to state court convictions under Section 2254, *Bias v. Ieyoub*, 36 F.3d 479, 480 (5th Cir.1994). Thus, the Fifth Circuit has explained that under *Blockburger* "double jeopardy concerns are *not* raised if each crime charged requires an element of proof the other crimes charged do not." *Fisher*, 106 F.3d at 632 (emphasis added); *accord Bias*, 36 F.3d at 480 ("there is no double jeopardy violation if each crime requires an element of proof which the other does not").

Petitioner's conviction on the charge of attempted aggravated rape required proof of the attempt to commit an act of anal, oral, or vaginal intercourse upon the victim. As shown below, proof of this element was not required in connection with petitioner's convictions on the charges of aggravated robbery, in violation of LSA-R.S. 14:64.4,[19] and second degree battery, in violation of LSA-R.S. 14:34.1. As such, clearly there was no double jeopardy violation in connection with petitioner's attempted aggravated rape conviction.

Aggravated robbery requires proof of: 1) "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another"; 2) "when the offender intentionally inflicts serious bodily injury." Second degree battery, at the time of petitioner's arrest and conviction, required proof of: 1) "a battery committed without the consent of the victim"; 2) "when the offender intentionally

_____

[19]Pursuant to Acts 2004, No. 651, § 1, the name of the crime, "aggravated robbery", was changed to "second degree robbery". The definition of the crime did not change.

inflicts serious bodily injury."[20] The term, "battery", is defined, in pertinent part, as "the intentional use of force or violence upon the person of another." LSA-R.S. 14:33 (West 2010).

Reviewing the above definitions, the Louisiana Fourth Circuit Court of Appeal, in *State ex rel. B.B*, 890 So.2d 668, 669-670 (La. App. 4 Cir. Dec. 1, 2004), concluded that because the essential elements of second degree battery "are also" the essential elements of aggravated robbery, "second degree battery is a lesser and included offense of the offense of aggravated robbery." The court specifically rejected the notion that the absence of the word "battery" in the definition of aggravated robbery meant that second degree battery required proof of a fact which aggravated robbery did not. The court reasoned that the "intentional infliction of serious bodily injury", an element of aggravated robbery, "is a battery." *State ex rel. B.B.*, 890 So.2d at 670.

The fact that second degree battery is subsumed by aggravated robbery does not, however, provide petitioner with a valid basis for finding that his protection against double jeopardy was violated since the two crimes do not arise from the same act. As reflected in the court's recitation of the applicable facts,[21] petitioner committed second

---

[20]Pursuant to Acts 2009, No. 264, the definition of "second degree battery" was amended, deleting the language, "committed without the consent of the victim", and adding the language, "however, this provision shall not apply to a medical provider who has obtained the consent of the patient."

[21]*See supra* at pp. 5-6.

degree battery when he commenced punching the victim, J.H., at the time he forced the other passenger, Cantrelle, out of the van. The aggravated robbery, along with the attempted aggravated rape, took place later when petitioner, with J.H. as his captive, drove away in the van and proceeded to instruct J.H. to take off her clothes, then beat her again, saturating her clothes in blood, bit her, and ultimately stole her van and used her credit card to purchase gas.

Assuming *arguendo* that petitioner's convictions for aggravated robbery and second degree battery did arise from the same event, resulting in a double jeopardy violation, petitioner, nevertheless, would not be entitled to habeas corpus relief in the form of a new trial. Where a petitioner, in violation of his double jeopardy protection, "is convicted of both a greater and lesser included offense, the conviction and sentence on the lesser charge must be vacated." *United States v. Belt*, 516 F.2d 873, 875-876 (8th Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976) (citations and footnote omitted). However, the invalidation of a petitioner's conviction on the lesser charge, in this case, second degree battery, does not automatically entitle a petitioner to a new trial.

In *Morris v. Matthews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), the Court set forth the test to be applied for purposes of determining when a new trial is warranted in a situation where a jeopardy-barred offense is tried with an unbarred offense. In such a situation, "the burden shifts to the defendant to demonstrate a

reasonable probability that he would not have been convicted of the nonjeopardy-barred offense absent the presence of the jeopardy-barred offense." *Morris*, 475 U.S. at 247, 106 S.Ct. at 1038. The Court explained "that a 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Morris*, 475 U.S. at 247, 106 S.Ct. at 1038, citing *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, "[t]o prevail in a case like this, the defendant must show that, but for the improper inclusion of the jeopardy-barred charge, the result of the proceeding probably would have been different." *Id*.

In this case, petitioner has made no showing of a reasonable probability that the outcome of his proceedings would have been different had he not been tried and convicted on the charge of second degree battery. A review of the sentences petitioner received as a result of the jury's verdict of guilty on all charges illustrates the lack of significance, relatively speaking, of petitioner's second degree battery conviction. As stated earlier, petitioner was sentenced to 40 years for the aggravated robbery conviction; to 50 years for the attempted aggravated rape conviction; but only to three to five years for the second degree battery conviction, with all sentences running concurrently. Thus, the invalidation of petitioner's second degree battery conviction due to a double jeopardy violation would not affect the term of petitioner's present confinement. Accordingly, petitioner claim for habeas corpus relief is without merit.

## 5) Counsel Erred in Failing to Argue Prosecutorial Misconduct

Petitioner argues that both trial and appellate counsel were ineffective in failing to argue that prosecutors acted improperly in introducing into evidence an un-redacted copy of his bill of information which reflected, in addition to the three charges for which he stood trial, charges of aggravated rape and sexual battery.[22] However, as the State points out in its response (rec. doc. 16, p. 29) and as a review of the pertinent record reflects, there is no evidence to suggest that a copy of the bill of information, redacted or un-redacted, was provided to jurors. Accordingly, as there was no misconduct on the part of prosecutors in this regard, counsel was not ineffective in failing to raise this non-issue.

Petitioner also appears to argue that counsel was ineffective in failing to object to the prosecutor's misconduct in introducing evidence to the effect that the van, which petitioner drove away in after the victim escaped, contained the victim's purse and cell phone and that petitioner later used the victim's bankcard, contained in her purse, to purchase gas. However, evidence of the above actions on the part of petitioner were not superfluous, introduced for unlawful, prejudicial purposes. Instead, said evidence was properly introduced in support of the State's charge of aggravated robbery, a charge which required proof of the taking of something of value. Further, said evidence was not

---

[22]As stated earlier, the charges of aggravated rape and sexual battery were *nolle prossed* by the State following petitioner's trial which resulted in guilty verdicts on the charges of attempted aggravated rape, aggravated robbery and second degree battery.

introduced solely in connection with the prosecution's case. Petitioner, on direct examination, testified that he used the victim's credit card to purchase gas.

Finally, petitioner argues that counsel erred in failing to object to the prosecution's alleged misconduct in asking Cantrelle, in order to refute petitioner's self-defense claim, to stand before the jury so they could compare Cantrelle's size with petitioner's size, and in asking petitioner whether the victim was lying. However, neither of the above-described incidents constitute "misconduct" on the part of the prosecution. The jury was fully aware of both Cantrelle's size and petitioner's size as both men took the witness stand and offered testimony at petitioner's trial. Further, counsel's question to petitioner with regard to whether he believed the victim had testified truthfully was not improper given the fact that petitioner's version of the facts was in stalk contrast to the victim's version of events and, as such, clearly petitioner could not believe the victim's testimony if he, himself, was telling the truth.

### 6) Counsel Erred in Stipulating to State's Case

Petitioner argues that counsel was ineffective in stipulating to evidence which comprised a portion of the State's case against petitioner, thereby failing to present a proper defense. Specifically, petitioner submits that counsel erred in stipulating to the following:

1. To the accuracy of the medical records reflecting the injuries the victim suffered on the night at issue;

2.  That a bar patron, John Boudreaux, would have offered testimony to the effect that petitioner was in the bar on the night at issue;

3.  That Detective Randy Thibodeaux would have offered testimony to the effect that he presented a "waiver of rights" form to petitioner which petitioner properly executed before offering any statements to police;

4.  To the accuracy of the DNA evidence, including the "chain of custody".

Petitioner also complains that counsel erred in waiving an opening statement. Further, petitioner suggests that counsel failed to put on a proper defense because he was angry that petitioner had attempted to have him removed from the case.

The court finds petitioner's ineffectiveness claim, based upon the above allegations, to be without merit in light of petitioner's failure to show how he was prejudiced by counsel's actions and, as such, how counsel was deficient in making the decisions he made regarding his defense of petitioner.  Specifically, petitioner offers no evidence to suggest that the pertinent medical records and DNA evidence was not accurate and, as such, should have been challenged.  Nor did petitioner suffer any prejudice from counsel's stipulation to the testimony that would have been provided by Mr. Boudreaux and Detective Thibodeaux.  Petitioner admitted at trial that he was in the bar on the night at issue.  Further, contrary to petitioner's suggestion to the contrary, petitioner, at trial, offered no testimony contesting the voluntariness of his pre-trial statements.  As for counsel's waiver of an opening statement, again, petitioner makes no showing regarding how he was prejudiced by counsel's waiver.  Finally, petitioner's

suggestion that counsel's stipulations and defense strategy may have been prompted by counsel's anger at petitioner for attempting to have counsel removed from the case holds no sway for this court based upon the court's finding that counsel's stipulations and defense decisions were neither deficient nor prejudicial.

> ### 7) Appellate Counsel Erred in Failing to Argue "Error Patent", Failing to Raise Arguments Based Upon Objections Raised at Trial, and Failing to Argue Ineffective Assistance of Trial Counsel

In his final claim, petitioner contends that appellate counsel was ineffective due to his failure to argue error patent, failure to raise arguments based upon objections raised at trial, and failure to argue that trial counsel was unconstitutionally ineffective. For the following reasons, petitioner's arguments are without merit.

To prove that appellate counsel was ineffective, petitioner must satisfy the same two-prong test enunciated in *Strickland*, *supra*, that counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted*)* ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").

With regard to petitioner's complaint that appellate counsel failed to argue error patent, as the state district court observed, upon addressing petitioner's argument

on post-conviction, the Louisiana Fifth Circuit did, in fact, conduct an error patent review in connection with petitioner's direct appeal.

On direct appeal, the Fifth Circuit Court of Appeal conducted a search for errors patent on the face of the record. The Court found on[e] patent error related to registration of sexual offenders. The district court was instructed to provide written notice of the registration requirement. In all other respects, the court did not find patent error. *State v. Graffia*, 951 So.2d 1186, 06-756 (La. App. 5 Cir. 1/30/07). In sum, the petitioner received patent error review on appeal.[23]

The arguments which petitioner contends counsel should have raised on appeal are as follows: 1) That the trial court erred in allowing the victim to offer improper opinion testimony regarding whether petitioner was intoxicated during the pertinent time period, whether it was her blood in the van, and whether petitioner intended to rape her; 2) that the victim was improperly allowed to remain in the courtroom following her testimony; and, 3) that trial counsel was unconstitutionally ineffective.

Petitioner suffered no prejudice based upon appellate counsel's failure to raise arguments 1) and 2) because said arguments are without merit for purposes of petitioner obtaining relief from his convictions. The fact that the victim was not an expert did not, contrary to petitioner's suggestion, preclude her from offering testimony regarding whether she believed petitioner was intoxicated, what petitioner's intent was and whether it was her blood in the van. Rather, her lack of expertise was a factor for the jury to consider in determining the weight to be accorded to her opinion testimony.

---

[23]State rec., vol. 2 of 5.

As for the fact that the victim, following her testimony, was allowed to remain in the courtroom, as the State notes in its response (rec. doc. 16, pp. 35-36), state law specifically allows a crime victim to remain in the courtroom during the prosecution of the defendant accused of committing the crime. Further, petitioner fails to point out how he was prejudiced by the court's ruling in this regard since the victim was the first witness to offer testimony at trial and she was not recalled to the witness stand after hearing the testimony of the other trial witnesses.[24]

As for petitioner's claim that counsel erred in failing to argue on appeal that trial counsel was ineffective, as noted earlier, it is well-established under Louisiana law that the proper avenue for raising a claim of ineffective assistance of counsel is via post-conviction relief, not direct appeal.[25] Further, petitioner has failed to make the requisite showing that he was prejudiced by appellate counsel's alleged failure to raise ineffectiveness on direct appeal since he raised, via state post-conviction and federal habeas review, ineffective assistance of counsel, but to no avail. His arguments in this regard have been deemed to be without merit.

Accordingly;

---

[24]*See* State rec., vol. 4 of 5, p. 350.

[25]*See* discussion *supra* at p. 22.

**RECOMMENDATION**

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[26]

New Orleans, Louisiana, this __28th__ day of _____July_____, 2010.

LOUIS MOORE, JR.
United States Magistrate Judge

---

[26]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.